E-FILED
Thursday, 17 June, 2021  02:39:47 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS


HAROLD PEMBERTON,
                    Plaintiff,


v.                                          Case No.
                                            42 U.S.C. 1983
                                            Civil Action
Wexford Health Sources, Inc.,               Jury Trial Demanded
Rob Jeffreys, Amy Burle, Dr. Ritz,
Justin Young, Justin Duprey,
Kim Larson, and MiRada Ritter,
                    Defendant.


## COMPLAINT


a. Introduction

This is a civil rights action filed by Harold Pemberton, a
pro se state prisoner, setting forth facts that establish a
clear violation of his Constitutional rights under the 8th
Amendment to the United States Constitution. Specifically, the
Plaintiff asserts that the defendants were deliberately
indifferent to his serious medical condition when they repeatedly
delayed in providing reasonable and adequate medical treatment
for his injured finger after he repeatedly made them aware of
it. The Plaintiff asserts that the acts and omissions of the
defendants exacerbated the situation and subjected him to
unnecessary pain and suffering. The Plaintiff further asserts
that the conduct perpetrated against him was the result of-

-1-

widespread and pervasive customs, policies, patterns and practices
promoted, encouraged, and instructed by Wexford Health Sources, Inc.,
and the Illinois Department of Corrections. Furthermore, the Plaintiff
also contends that Wexford Health Sources, Inc., and the Illinois
Department of Corrections, are both liable in this action due to
their repeated failure to properly train and supervise their employees.

b. Jurisdiction

This Court has Jurisdiction over the Plaintiff's federal claim
pursuant to 28 U.S.C. 1331 and 1343.

c. Color of State Law

During the events described in this Complaint the defendants
acted under "Color of State Law".

d. Capacity

The defendants are being sued in their individual capacities
for monetary damages. The defendants are being sued in their
official capacities for injunctive and declaratory relief.

e. Parties

PLAINTIFF: Harold Pemberton is the Plaintiff in this action.
During the events described in this Complaint Harold Pemberton
was a prisoner incarcerated at Danville Correctional Center.
The Plaintiff's current mailing address is: Harold Pemberton,
I.D. # M-25423, 3820 East Main Street, Danville, Illinois 61834.

DEFENDANT: Wexford Health Sources, Inc. (Wexford) is a defendant in this action. During the events described in this Complaint Wexford was contracted with the Illinois Department of Corrections to provide medical care to Illinois state prisoners. Wexford's last known mailing address is: Foster Plaza 2, 425 Holiday Drive, Pittsburgh, PA 15220.

DEFENDANT: Rob Jeffreys is a defendant in this action. During the events described in this Complaint Defendant Jeffreys was the Director of the Illinois Department of Corrections. Defendant Jeffreys' last known mailing address is: 1301 Concordia Ct., Springfield, IL 62794.

DEFENDANT: Justin Young is a defendant in this action. During the events described in this Complaint Defendant Jeffreys was employed by Wexford as a Doctor and Medical Director for Danville Correctional Center. Defendant Young's last known mailing address is: 3820 East Main Street, Danville, IL 61834.

DEFENDANT: Dr. Ritz is a defendant in this action. During the events described in this Complaint Defendant Ritz was employed by Wexford as a doctor to provide medical care to Illinois state prisoners. Defendant Ritz's last known mailing address is: Foster Plaza 2, 425 Holiday Drive, Pittsburgh, PA 15220.

DEFENDANT: Amy Burle ia a defendant in this action. During the events described in this Complaint defendant Burle was employed by the Illinois Department of Corrections and assigned to the Administrative Review Board for the Illinois Department of Corrections. Defendant Burle's last known mailing address is: 1301 Concordia Ct., Springfield, IL 62794.

DEFENDANT: Justin Duprey is a defendant in this action. During

the events described in this action Justin Duprey was a Nurse
Practitioner employed by Wexford to provide medical care to
Illinois state prisoners at Danville Correctional Center. Defendant
Duprey's last known mailing address is: 3820 East Main Street,
Danville, Illinois 61834.

DEFENDANT: E. Pearson is a defendant in this action. During the
events described in this Complaint Defendant Pearson was a nurse
employed by Wexford to provide medical care to Illinois state
prisoners at Danville Correctional Center. Defendant Pearson's
last known mailing address is: 3820 East Main Street, Danville,
Illinois 61834.

DEFENDANT: Kimberly Larson is a defendant in this action. During
the events described in this Complaint Kimberly Larson was the
Warden at Danville Correctional Center. Defendant Larson's last
known mailing address is: 3820 East Main Street, Danville, Illinois
61834.

DEFENDANT: MiRada Ritter is a defendant in this action. During the
events described in this Complaint MiRada Ritter was employed by
Wexford to be the Director of Nursing for Danville Correctional
Center. The defendant's last known mailing address is: 3820 East
Main Street, Danville, Illinois 61834.

-4-

f. Facts

1. On July 23, 2019, the Plaintiff sustained a serious injury
to his finger while playing basketball at Danville Correctional
Center.

2. The injury was to the third finger of the Plaintiff's left
hand.

3. The Plaintiff's injury was both painful and debilitating.

4. In addition to the pain and debilitation that the Plaintiff
experienced, he was also unable to straighten his finger to its
normal anatomical position.

5. The Plaintiff immediately showed his injury to the Correctional
Officer on duty. The Plaintiff's finger was painful, swollen,
discolored, and bent at an unnatural angle. The Correctional Officer
sent the Plaintiff to the prison's Health Care Unit (HCU) immediately.

6. Upon arriving to the HCU, the Plaintiff encountered Defendant
Justin Duprey. Defendant Duprey is a Nurse Practitioner. The Plaintiff
presented his injury to Defendant Duprey and requested appropriate
medical treatment. Defendant Duprey performed a cursory "visual"
examination of the Plaintiff's finger and informed the Plaintiff
that he (Duprey) needed to consult with Defendant Justin Young.
Defendant Young was the Medical Director for Danville Correctional

Center, he was also the only medical doctor assigned to the prison.
Despite being placed on notice by Defendant Duprey about the
Plaintiff's injury, Defendant Young failed to perform a physical
examination of the Plaintiff's finger.

7. An x-ray was performed on the Plaintiff's finger, however,
the defendants were evasive in explaining the extent of the
Plaintiff's injury. Instead, a splint was placed on the Plaintiff's
finger, however, the decision to apply the splint to the Plaintiff's
finger was not based upon the defendants' own independent medical
judgment, it was actually in response to the Plaintiff complaining
about the cursory fashion in which the defendants were handling
his injury. In fact, the application of the splint was so perfunctory
that the splint utilized by the defendants was actually the wrong
size——————it didn't even extend far enough along the Plaintiff's
finger to provide stability to the Plaintiff's injured joint. The
defendants never even bothered to instruct the Plaintiff on how to
properly maintain and care for the splint, the defendants carelessly
and haphazardly applied the splint to the tip of the Plaintiff's
finger and rushed him out of the HCU.

8. The application of the splint amounted to no treatment at
all. The splint was not long enough to stabilize the Plaintiff's
finger and only added to his pain and debilitation. The Plaintiff's
condition deteriorated during the night. The pain and swelling of
the Plaintiff's hand dramatically increased. The Plaintiff's
condition became so bad that he could not sleep. The Plaintiff

-6-

repeatedly sought adequate medical attention from the defendants, but to no avail. The Plaintiff was forced to file emergency grievances and implore his family to call the prison.

9. The Plaintiff's finger was x-rayed again on August 13, 2019, however, the Plaintiff had gone untreated for so long that he could no longer straighten his finger. The x-ray report revealed the possibility of ligament damage. The defendants withheld this information from the Plaintiff. The Plaintiff did not learn about the findings in the x-ray report until he obtained his own copy of the report at a much later date. The radiologist who conducted the report, Dr. P. Javadi, recommended that the Plaintiff's finger be physically examined. Dr. Javadi also suggested the potential utilization of an MRI to determine the existence of ligamentous injury. The defendants never performed a physical examination of the Plaintiff's finger and refused to provide the Plaintiff with an MRI until approximately one year after the initial injury. Defendant Duprey and Defendant Young were aware of the contents of the radiological report, both of their names appear on the face of the document, Defendant Young signed the document acknowledging that he had received it. Furthermore, the Plaintiff's medical records definitively confirm that Defendant Young, along with Defendant Ritz, directly delayed the MRI on purpose. In the interim, the defendants provided no further treatment for the Plaintiff's finger, despite the Plaintiff's many requests and despite the fact that the Plaintiff repeatedly placed the defendants on notice that the condition of his finger was deteriorating.

-7-

10. On August 23, 2019, the Plaintiff placed Defendant Duprey on notice that the condition of his finger had not improved. The Plaintiff informed Defendant Duprey that he was in pain, that he could no longer straighten his finger, and that his range of motion had become impaired. Defendant Duprey ignored the information that the Plaintiff provided to him, refused to completely and accurately document the information that the Plaintiff provided to him, and refused to physically examine the Plaintiff's finger.

11. On August 29, 2019, the Plaintiff placed Defendant Young on notice that the condition of his finger had not improved. The Plaintiff informed Defendant Young that he was in pain, that he could no longer straighten his finger, and that his range of motion had become impaired. Defendant Young ignored the information that the Plaintiff provided to him, refused to completely and accurately document the information that the Plaintiff provided to him, and refused to physically examine the Plaintiff's finger.

12. On August 30, 2019, the Plaintiff placed Defendant Duprey on notice that the condition of his finger had not improved. The Plaintiff informed Defendant Duprey that he was in pain, that he could no longer straighten his finger, and that his range of motion had become impaired. Defendant Duprey ignored the information that the Plaintiff provided to him, refused to completely and accurately document the information that the Plaintiff provided to him, and refused to physically examine the Plaintiff's finger. When the Plaintiff began to protest, Defendant Duprey (without ever physically examining the Plaintiff's finger) halfheartedly taped two tongue

-8-

depressors around the the Plaintiff's finger and told him that Defendant Young would "follow-up" with the Plaintiff in two weeks. Defendant Duprey failed to instruct the Plaintiff on how to properly maintain and care for the rudimentary makeshift splint, and Defendant Young never even bothered to "follow-up" with the Plaintiff like he said that he would.

13. On October 6, 2019, the Plaintiff placed Defendant Pearson on notice that the condition of his finger had not improved. The Plaintiff informed Defendant Pearson that he was in pain, that he could no longer straighten his finger, and that his range of motion had become impaired. Defendant Pearson ignored the information that the Plaintiff provided to her, refused to completely and accurately document the information that the Plaintiff provided to her, and refused to physically examine the Plaintiff's finger.

14. On October 9, 2019, the Plaintiff placed Defendant Duprey on notice that the condition of his finger had not improved. The Plaintiff informed Defendant Duprey that he was in pain, that he could no longer straighten his finger, and that his range of motion had become impaired. Defendant Duprey ignored the information that the Plaintiff provided to him, refused to completely and accurately document the information that the Plaintiff provided to him, and refused to physically examine the Plaintiff's finger.

15. The conduct of the defendants is typical of Wexford employees. Wexford is a "For Profit" corporation contracted with IDOC to provide medical care to Illinois state prisoners. In order for Wexford to make a profit, the expenses that accrue in providing medical care to Illinois state prisoners can not exceed the amount of money that Wexford contractually agreed to accept from IDOC to provide medical care to Illinois state prisoners.

16. Wexford is well aware of the risk associated with delayed detection of joint and bone injuries, they have been involved in previous litigation concerning this very issue. Furthermore, even a lay person understands the reasonable likelihood of exacerbation or irreparable injury when joint and bone injuries are not treated promptly. As medical professionals, Defendant Duprey, and Defendant Young, were also aware of this risk and disregarded it. The x-ray performed on July 23, 2019, was nothing more than a "paper procedure" designed to fraudulently conceal the true nature of the Plaintiff's injury and "fluff up" the Plaintiff's medical records in anticipation of potential litigation. It is the custom, policy, pattern, and practice of Wexford to conduct all initial x-rays "in house" to control the initial production of medical documentation of an inmate's injuries. This allows Wexford to evade the documentation of certain injuries at the outset, thereby facilitating Wexford's ability to under-diagnose the injury and avoid the associated

-10-

expense in providing the appropriate medical care. On the other hand,
if the initial assessment was performed at a competent hospital
outside the prison, the appropriate standard of care would be followed
at each stage of the assessment. For example, if a x-ray revealed the
absence of a fracture or dislocation, yet the finger was bent at an
unnatural angle and was accompanied by excess pain, the appropriate
standard of care would be to assess the finger for joint, tissue, and
nerve damage. These types of tests and diagnoses, once recorded,
create a "duty of care" for Wexford that they are bound by law to
follow. Wexford systematically evades this duty of care by conducting
all of their initial x-rays "in house". If the x-ray reveals that
a bone is not broken or dislocated no further medical assessment
is conducted, even if the injury is accompanied by symptoms consistent
with joint, tissue, or nerve damage. Medical assessments of this
nature, i.e., MRI, CAT, PET, etc., are expensive, and so is the
treatment for each of the aforementioned underlying conditions.
Wexford evades performing certain tests on purpose because with
knowledge comes great responsibility. The responsibility of providing
appropriate medical care to Illinois state prisoners is too expensive
for Wexford's taste, so Wexford chooses profit and greed at the
expense of the health and safety of Illinois state prisoners.
Wexford is methodical in its approach to the illegal deprivation of
medical care to Illinois state prisoners. The various training and
operational manuals that Wexford distributes to its employees instructs,
promotes, encourages, and facilitates the unconstitutional conduct,
customs, policies, patterns, and practices set forth in this complaint.
The only protection for Illinois state prisoners is court intervention.

-11-

17. Wexford is no stranger to litigation. Wexford has been sued well over a thousand times for failing to provide adequate medical care. Wexford is indifferent to litigation. In fact, Wexford has crafted its customs, policies, and practices in anticipation of litigation. Wexford knows that it is illegal to provide inadequate medical care to Illinois state prisoners, however, Wexford has created customs, policies, and practices designed to fraudulently conceal its liability and Circumvent The Deliberate Indifference Standard.

18. For example, Wexford requires a prisoner to attend "Nurse Sick Call" (NSC) several times before seeing a doctor. This is a blanket policy. Wexford knows that it is illegal but it serves a greater purpose for them. Wexford uses the NSC records to make it seem as though the prisoner has received medical care on multiple occasions. This is designed to fool the court into believing that Wexford is responding reasonably to the medical needs of Illinois state prisoners.

19. The NSC process is a sham. Illinois state prisoners are NEVER physically examined during NSC. The NSC process is confrontational and ADVERSARIAL, inmates who attend are met with antagonism, suspicion, and contempt. The atmosphere is designed to discourage inmates from using the prison's health care system, this ensures a greater profit margin for Wexford.

20. The NSC records are generated in anticipation of litigation. At Danville, Defendant Ritter (Director of Nursing) facilitates this process.

-12-

The nurses falsify and under-report the subjective and objective information and data that they receive during the NSC encounter. The nurses notoriously under-report subjective pain levels and often omit them altogether. The nurses are also "deceitfully selective" concerning the symptoms that they choose to record, purposefully minimizing the totality of the medical complaint, and often times flat out lying about it. This makes the medical complaint seem less urgent, or not serious at all, to whoever reads the medical record at a later date. This is all "Wexford Litigation Strategy". Liability Protection. The bogus medical records allow Wexford doctors to strategically evade the "subjective component" of the deliberate indifferent standard by later claiming that they were unaware of the necessary facts to respond reasonably to an inmate's medical needs. The Wexford doctor then pivots——and points to all of the bogus NSC visits and records, with the excuse that the doctor's response was reasonable based upon the information that was available to the doctor at that time. This is by design. Wexford doctors will only address the issues identified in the NSC record, so if the NSC record minimizes the medical complaint the doctor can mis-diagnose or under-diagnose (Purposefully) without creating the appearance of an inconsistency in the record.

21. The Plaintiff was the victim of Wexford's customs, policies and practices. The defendants are all employees of Wexford and utilized the company's customs, policies, and practices to deny the Plaintiff prompt and adequate medical care. The defendants purposefully and strategically ignored the Plaintiff's complaints

-13-

and intentionally misrepresented them. The defendants knew, or should
have known that Wexford could not force them to follow customs,
policies, and practices that are illegal. The defendants can not
claim that they were "just doing their job" or that they were "just
following orders", the defendants are liable for making the personal
choice to violate the Plaintiff's Constitutional Rights. Wexford is
liable under Monell v. Dept. of Soc. Serv., 436 U.S. 658, for their
unconstitutional customs, policies, patterns, and practices that
are both pervasive and widespread throughout Danville Correctional
Center and the Illinois Department of Corrections.

22. The IDOC defendants are also liable in this case. Defendant
Jeffreys (Director of IDOC), Defendant Burle (Administrative
Review Board), and Defendant Larson (Warden of Danville), are
all complicit with the unconstitutional customs, policies,
patterns and practices of Wexford. Each of these defendants
were aware of the pervasive and widespread unconstitutional
customs, policies, patterns, and practices of Wexford through
the U.S. District Court's Special Investigative Report in
Lippert v. Godinez. Despite having knowledge of Wexford's
habitual illegal conduct, and despite the fact that each of
these defendants have decision-making power, each of these
defendants have repeatedly turned a blind eye to Wexford's
conduct.

23. However, the IDOC defendants do not only routinely turn a blind
eye to Wexford's habitual illegal conduct, they also encourage,

-14-

promote, and facilitate it. In fact, Defendant Jeffreys, and Defendant
Burle, even went so far as to falsify official IDOC grievance reports
in this case. Specifically, when the Plaintiff filed multiple
grievances concerning the deprivation and delay of adequate medical
care and requested a MRI, Defendant Burle, and Defendant Jeffreys,
falsely claimed in their official grievance report that the Plaintiff
had already received a MRI. The problem with the defendants' report
is that it is dated January 8, 2020. The official medical records
generated by the hospital that actually performed the MRI definitively
shows that the Plaintiff did not receive a MRI until June 30, 2020,
Over Six Months AFTER the defendants falsely claimed in their report
that the Plaintiff had already received a MRI.

24. The Plaintiff contends that the defendants deliberately lied
in their official grievance report to cover-up the unexplainable
conduct of Wexford, and to evade liability for IDOC's failure to
adequately ensure that Wexford was operating within the bounds of
the law. "Cover-Ups" of this nature are pervasive and widespread
throughout Danville and IDOC. These customs, policies, patterns,
and practices promote, encourage, and facilitate deliberate
indifference, in violation of the 8th Amendment to the United
States Constitution.

25. The defendants' customs, policies, patterns, and practices
are responsible for the systemic failures that resulted in an
unnecessary delay of medical care and caused needless pain and
suffering. The multiplicity of Wexford and IDOC employees involved
in the instant case is indicative of the systemic nature of the

-15-

problem. The Wexford system is broken. The Wexford system facilitates and promotes deliberate indifference, in violation of the 8th Amendment to the United States Constitution, and IDOC condones it.

g. Basis For Relief

A). Defendants Young, Duprey, and Pearson violated the Plaintiff's rights under the 8th Amendment to the United States Constitution when they ignored the objective and subjective medical information that the Plaintiff provided to them, refused to completely and accurately document the objective and subjective medical information that the Plaintiff provided to them, and refused to physically examine the Plaintiff's finger after he repeatedly made each of them aware of the fact that he was in pain, that he could not straighten his finger, and that the condition of his finger had not improved.

B). Defendants "Wexford", and Ritter, were deliberately indifferent to the Plaintiff's serious medical needs when they created, executed, encouraged, promoted, and facilitated widespread and pervasive customs, policies, patterns, and practices aimed at prioritizing financial profits over their Constitutional obligation to provide reasonably adequate medical care to Illinois state prisoners. The acts and omissions of the defendants resulted in an unnecessary deprivation and delay of appropriate medical care to the Plaintiff and subjected him to prolonged unnecessary pain and suffering.

C). Defendant Jeffreys, and Defendant Burle, violated the Plaintiff's

-16-

2:21-cv-02141-CSB  # 1   Page 17 of 18

rights under the 8th Amendment to the United States Constitution when they deliberately falsified prison records to "cover-up" the fact that the Plaintiff's injury had never been properly assessed and treated.

D). Defendants Jeffreys, and Burle, both having final decision-making power concerning the investigation and adjudication of inmate grievances, violated the Plaintiff's rights under the 8th Amendment to the United States Constitution when they created, participated, encouraged, promoted, and facilitated pervasive and routine customs, policies, patterns, and practices to "cover-up" the widespread and systemic deliberate indifference perpetrated by Wexford, which resulted in an unnecessary deprivation and delay of medical treatment to the Plaintiff and subjected him to unnecessary pain and suffering.

E). Defendants Jeffreys, and Larson, both having final decision-making power over the total operation of the Illinois Department of Corrections (Jeffreys), and the Danville Correctional Center (Larson), violated the Plaintiff's rights under the 8th Amendment to the United States Constitution when they created, promoted, encouraged, participated, and facilitated pervasive and routine customs, policies, patterns, and practices that resulted in an unnecessary deprivation and delay of medical treatment to thee Plaintiff and subjected him to unnecessary pain and suffering.

h. Relief

1. The Plaintiff request that he be Awarded moetary damages in an amount to be determined.

-17-

2. The Plaintiff request that an Injunctive Order be issued commanding the defendant to provide the Plaintiff with complete and adequate medical care for his finger.

3. The Plaintiff request that a Declaratory Order be issued setting forth the unconstitutional acts and omissions outlined in this Complaint.

4. The Plaintiff request that he be awarded Cost and Attorney Fees.

5. The Plaintiff request any and all other relief that the court deems just.

Respectfully Submitted,

Plaintiff, pro se

Subscribed and sworn to before me
on this 17th day of June, 2021.

NOTARY

OFFICIAL SEAL
RYAN RUS___N
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/16/23